THE PEOPLE OF PUERTO RICO, Petitioner, *v.* THE TRIBUNAL OF THE JUDICIAL DISTRICT OF SAN JUAN, Respondent.

No. 1653. Argued June 24, 1946.—Decided July 11, 1946.

*E. Campos del Toro, Attorney General, Edwin Cortés, Deputy Attorney General,* and *José C. Aponte, District Attorney of San Juan,* for petitioner. *Hipólito Marcano* for defendant in the main proceeding.

MR. JUSTICE CÓRDOVA delivered the opinion of the court.

The question raised in this certiorari proceedings is whether a district judge has power, under Act No. 259 of April 3, 1946 (Laws of 1946, p. 534), to suspend the sentence imposed upon a person · convicted of involuntary manslaugther, which is a misdemeanor.

Secton 2 of Act No. 259 in its pertinent part provides: (Spanish text)

"El efecto de la sentencia que se imponga a toda persona que cometa cualquier delito grave que no sea asesinato en primer gra'do, deberá ser suspendido y el sentenciado puesto a prueba, siempre que, al tiempo de imponer dicha sentencia, concurran los siguientes requisitos . . ."[1]

The respondent judge, relying on the provisions which we have just cited, suspended the sentence imposed upon a person convicted of involuntary manslaughter, considering it a "serious offense" ("*delito grave*"), within the meaning of the statute. The People asks that the order of the respondent judge be vacated, contending that under Act No. 259 sentence may not be suspended in misdemeanor cases. The defendant has appeared through his attorney and contends that the sentence may be suspended in all cases, whether or not the offense is a felony.

Let us consider first the defendant's contention. He states "that the intention of the lawmaker can not be to ap-

---

[1] The English version reads as follows: "The effect of the sentence imposed on any person guilty of a felony other than murder in the first degree, shall be suspended, and the person sentenced placed on probation whenever at the time of imposing said sentence the following requisites concur: . . ."

ply the law of suspended sentences according to the degree of the crime nor that the degree of the crime can alter or change te scientific purpose sought by the Act." He concludes that when the Legislature authorized the suspension of sentences in cases of "serious offense" (*"delito grave"*) it desired to include every offense.

We can not agree with the contention of the defendant. Act No. 259 only authorizes the suspension of the sentences in cases involving serious offense. There is nothing in the Act which authorizes us to conclude that the legislative intent was any other than that clearly expressed when it used the adjective "serious" (*"grave"*). And apart from the letter of the Act, we know nothing regarding the legislative purpose, since apparently there is no official record of public hearings, or reports of legislative committees, or debates in the Legislature, if indeed there were such hearings, reports, or debates. We have no basis, therefore, to harbor doubts as to the construction of the Act, the letter of which clearly limits its scope to serious offenses. It is true that it is not easy for us to understand the reason the Legislature had to grant the privilege of suspended sentences to persons convicted of serious offenses and deny it to persons convicted of lesser offenses.[2] But our lack of understanding of the lawmaker's motives can not be used as an excuse to ignore the clear expression of his intention.

It remains to be considered whether involuntary manslaugther is included within the serious offenses (*"delitos graves"*) to which the Act refers. Under the Anglo-American system of criminal law which prevails in Puerto Rico, crimes are divided, according to the punishment they entail, in two classes: felonies and misdemeanors.[3] Since the approval of the Penal Code on March 1, 1902, the term "felony" has been

---

[2] Act No. 19 of March 12, 1914 (Laws of 1914, p. 151), authorizes the suspension of sentences in cases of misdemeanor, but only in cases in which the defendant is under sixteen years of age or over sixty.

[3] Sections 13 and 14 of the Penal Code of 1902.

translated as *"delito grave"* (serious offense) and "mis-demeanor" as *"delito menos grave"* (less serious offense.)[4] At times the terms "felony" and "misdemeanor" are used, without translation, in the Spanish text of the law[5]; sometimes the usage is "delito grave *(felony)*" and "delito menos grave *(misdemeanor)*"[6]; sometimes it is put *"felony* (delito grave)" and *"misdemeanor* (delito menos grave)"[7] and sometimes, particularly in more recent enactments, as in Act No. 34 of May 4, 1933, to amend the provisions relative to the punishment for the offense of involuntary manslaughter under consideration, the English term is dispensed with, and only the Spanish equivalent is used:

". . . El homicidio involuntario . . . Será considerado como un delito menos grave a todos los efectos de la ley . . ."[8]

It very clearly appears, therefore, that when the Legislature authorized the suspension of sentences in cases of *"delito grave"* ("serious offense"), it referred to felonies. It is argued, nevertheless, that since each time that the Legislature has used the term *"delito grave"* ("serious offense") as equivalent to "felony" it has used both terms, and that, inasmuch as in Act No. 259 it did not use the term "felony," it was its intention to make reference to a classification of offenses as serious and less serious, other than the one defined in the Penal Code, that is, the historical classification of felonies and misdemeanors. One difficulty we have with this argument is that we are not offered, nor can we conceive, any standard to establish that other clas-

---

[4] See, for instance, §§ 13, 18, 63, 78, 87, 90, 91, 95, 126, 128, 147, 150, 203, and 209 of the Penal Code.

[5] See, for instance, §§ 14, 30, 36, 37, 42, 88, 92, 96, 97, 98, and 103 of the Penal Code.

[6] See, for instance, §§ 63, 78, 126, 147, 150, 203, and 209 of the Penal Code.

[7] See, for instance, §§ 18, 87, 91, 95, and 128 of the Penal Code.

[8] Section 204, Penal Code.

The English text, in its pertinent part, recites as follows: ". . . Involuntary homicide . . . It shall be considered as a misdemeanor for all legal purposes . . ."

sification, nor has the Legislature established it. If "serious offense" ("*delito grave*") does not mean "felony" in Act No. 259, then what does it mean? Which are the serious offenses, (*delitos graves*) to which Act No. 259 refers and which are less serious offenses (*menos graves*)? Neither the respondent nor counsel for the defendant has been able to give an adequate answer to that question, nor has any occurred to us. The respondent has suggested that the "general" or grammatical meaning of the word "serious" ("*grave*") may be used to establish the classification, and that according to that general or grammatical meaning, the degree of the offense is determined by the punishment. But that would bring us to the conclusion that the general or grammatical meaning of the concept "serious offense" ("*delito grave*") is not different from the technical meaning, since, under § 14 of the Penal Code, crimes are classified as felonies and misdemeanors (*graves o menos graves*) according to the punishment. It is true that under § 14 of the Penal Code the severity of the punishment depends on its quality instead of its quantity, it being considered that the punishment of imprisonment in the penitentiary is severe (*grave*) and that of jail or a fine is less severe (*menos grave*) and that many persons may have a concept of severity different from that set forth in the Code. For instance, some persons may conceive that a punishment of six months' imprisonment, although it be in jail, or a fine of $1,000, is severe. Others may consider any punishment of imprisonment in jail severe. Some may consider a fine of $25 severe, and others may deem a fine of $100 light. But we know of no generally accepted classification of crimes as serious and less serious, based on the relative severity of the punishment, other than the classification made by § 14 of the Penal Code, nor has any other classification been suggested to us. We have, therefore, no basis for considering that the Legislature had in mind any other classification than that set forth in the Penal Code.

Moreover, the argument that, inasmuch as the Legislature up to the present, when referring to "felony" has used the words *"delito grave* (felony),'' the omission for the first time[9] of the English term "felony" in Act No. 259, indicates that the Legislature did not intend to refer to felonies, does not convince us. Since in 1902 in Puerto Rico there were no words clearly equivalent to the technical meaning of the terms "felony" and "misdemeanor," it was natural that in the beginning, in translating those terms into Spanish, their equivalent in English should also be set forth. But the necessity of setting forth the English equivalent was transitory, until such times as use of the words *"delito grave"* and *"delito menos grave"* gave them the technical meaning which originally they did not have. As we have seen, by 1933, when the Legislature amended § 204 of the Penal Code, *supra,* it defined the crime of involuntary manslaughter as a *delito menos grave* and did not consider it essential to add in parentheses "misdemeanor." Some time or another the same thing was bound to happen with "felony," if indeed Act No. 259 is the first Act to dispense with that term. Therefore, the absence of the word "felony" in Act No. 259, in our judgment, does not have special importance in the construction of the Act.

We have probably gone to unnecessary length in considering the scope and meaning of the expression *"delito grave"* as used in Act No. 259. The expression has a definite and well-grounded meaning in our legislation and jurisprudence, and only one meaning: it means felony. Act No. 259 authorizes the suspension of sentences, therefore, in felony cases only. The offense of involuntary manslaughter is not a felony, and consequently, Act No. 259 does not authorize the suspension of the sentence in the case at bar.

The sentence of the lower court should be set aside and the case remanded for the imposition of the proper sentence.

---

[9] We have not stopped to investigate whether or not Act No. 259 is the first in Puerto Rico, which in using the expression *delito grave,* omits its equivalent in English.